**273 A.2d 315.**

JOSEPH ROMANO *vs.* B. B. GREENBERG CO.

JANUARY 26, 1971.

PRESENT: Roberts, C. J., Paolino, Powers, Joslin and Kelleher, JJ.

KELLEHER, J. This is an employee's appeal from a decree of the Workmen's Compensation Commission dismissing his petition for compensation benefits without prejudice.

The record shows that Romano has been employed as a full-time clerical employee of the United States Post Office for approximately eight years. In January 1969, he began to "moonlight" and work part time for respondent jewelry manufacturer. He worked about 24 hours weekly at respondent's plant where he spent most of his time separating buckles which had been molded in a continuous strip. In order to perform this operation, Romano would place a strip of buckles along the edge of a table and then strike the buckles with the palm of his right hand. Sometime in August 1969, he began to experience a numbness and pain in the thumb and several fingers of his right hand. He consulted with the plant nurse who in turn referred him to an orthopedic surgeon.

The surgeon testified before the trial commissioner. He described Romano's condition as a carpal tunnel syndrome which was directly related to his job with respondent. While the employee had to give up his second job, he has continued to work full-time with the postal service. His federal pay amounts to $160 a week. The respondent paid employee at the rate of $1.90 an hour. The salary for the second job averaged about $46 weekly.

The sole issue in this appeal is whether, as employee contends, the commission erred in computing his average weekly wage because of its failure to use the combined

earnings from the two jobs he was performing at the time he was forced to leave respondent's employment and its refusal to use a new formula for determining the average weekly wage which had been enacted by the Legislature after employee quit his second job.

The commission rested its denial of the present petition on the oft-repeated rule that an employee, who even though he has sustained a physical injury, cannot receive weekly compensation benefits unless and until he has demonstrated a loss of earning capacity. *Coletta* v. *State,* 106 R. I. 764, 263 A.2d 681; *Geigy Chemical Corp.* v. *Zuckerman,* 106 R. I. 534, 261 A.2d 844; *Peloso, Inc.* v. *Peloso,* 103 R. I. 294, 237 A.2d 320. The commission determined that employee's average weekly wage at the time he was disabled was $76. It reached this figure by multiplying his hourly pay of $1.90 by the figure 40 as provided in G. L. 1956 (1968 Reenactment) §28-33-20.[1] Since Romano's post-injury earnings of $160 were substantially greater than the pre-injury earnings he was receiving from his second job, the commission quite properly denied his petition. When computing an injured employee's post-injury earnings for the purpose of determining whether he is still totally incapacitated, all of his post-injury wages and earnings are to be considered regardless of whether they were earned in the employment in which he was injured. *Stillwater Worsted Mills, Inc.* v. *Beal,* 89 R. I. 34, 150 A.2d 704.

In asking that his average weekly wage be calculated on the basis of both his post office pay and his jewelry

---

[1]Section 28-33-20 reads: "Computation of earnings.—The 'average weekly wages, earnings, or salary' of an injured employee shall be ascertained as follows:

"(a) 'Average weekly wages, earnings or salary,' shall mean the average weekly wage earned by the employee at the time of the injury, reckoning wages as earned while working full time. 'Full time' shall mean not less than forty (40) times the hourly rate of wages or earnings."

plant salary, employee has either ignored or overlooked our holding made several years ago in *De Asis* v. *Fram Corp.*, 78 R. I. 249, 81 A.2d 280, where we ruled that when an employee is working two jobs and he is injured while on one job, his average weekly wage is not to be based on his combined earnings but it is to be determined solely on the wages received from the employer in whose service he was injured.[2] The *De Asis* case is dispositive of this phase of employee's appeal.

Notwithstanding the correctness of the commission's determination of his average weekly wage, the employee seeks to take advantage of an act passed by the Legislature during its 1969 session. This act, P. L. 1969, chap. 145 was enacted into law on May 14, 1969 but it did not become effective until September 1, 1969. It substantially revises §28-33-20 by providing that where an injured employee has worked for more than one employer during the 13-week period immediately preceding his injury, his average weekly wage shall be calculated on the basis of the wages earned from all employers during the involved period.

While this statute was not in effect at the time of the employee's injury, it was operative when he appeared before the trial commissioner. The statute was first mentioned in this cause when the full commission in its decision alluded to its passage but held it to be inapplicable to employee's petition, since it became effective after employee's disability had occurred. Now, before us, employee argues that the new act is procedural in nature and it should have been used by the commission when it established his average weekly wage. The employer, of course, maintains that the amendment is substantive and cannot be applied retroactively.

---

[2]The statute in *De Asis* was the predecessor to §28-33-20. Both statutes are identical.

In this jurisdiction, an injured worker's right to compensation and the determination of the rate of compensation to be paid him are controlled by the statutory provisions in effect at the time he becomes incapacitated. *Sherry* v. *Crescent Co.*, 101 R. I. 703, 226 A.2d 819; *Ludovici* v. *American Screw Co.*, 99 R. I. 747, 210 A.2d 648. Ordinarily, if a newly enacted statute is substantive law, it will have a prospective effect only and will not affect a pending action. Should the legislation be considered procedural, it will be deemed to operate retroactively and will be applied to a cause of action which arose prior to the passage of the act. See *Berditch* v. *James Hill Mfg. Co.*, 85 R. I. 69, 125 A.2d 204; *Gomes* v. *John J. Orr & Son*, 78 R. I. 96, 79 A.2d 618; *Vick* v. *Aubin*, 73 R. I. 508, 58 A.2d 109.

While there is no precise definition of either term, it is generally agreed that a substantive law creates, defines and regulates rights while a procedural law prescribes the methods of enforcing such rights or obtaining redress. *Ware* v. *City of Anchorage*, (Alaska) 439 P.2d 793; *State* v. *Garcia*, (Fla.) 229 So.2d 236; *Ogdon* v. *Gianakos*, 415 Ill. 591, 114 N.E.2d 686.

A procedural statute has been defined as one which neither enlarges nor impairs substantive rights but rather relates to the means and procedures for enforcing these rights. *McGee* v. *International Life Ins. Co.*, 355 U. S. 220, 78 S.Ct. 199, 2 L.Ed.2d 223.

In the *Berditch* case, we said that a statute which relates to the providing of workmen's compensation or fixing the amount thereof is substantive legislation. Under our compensation act, the computation of an employee's average weekly wage fixes the amount of compensation due to a deceased worker's dependents, or to a worker who is totally or partially incapacitated, or who has been stricken by an occupational disease, or who is due specific compen-

sation benefits because of a loss of a bodily function or member. This is so because in all of these circumstances the amount paid the worker is, by statute, geared to a percentage of his average weekly wage. We therefore believe that, since the statutorily defined average weekly wage is the basis for the amount of the weekly benefits to be paid by an employer or his insurance carrier to the worker or his representative, any change in this definition which can result in an increase or decrease in the benefits due a workman is a matter of substance and not one of procedure. *Cantrell* v. *Stambaugh,* (Ky.) 420 S.W.2d 677. Accordingly, the new method of computing an average weekly wage being effective after Romano had been incapacitated may not be used in this cause.

Our holding here is consistent with our holding in *Imperial Knife Co.* v. *Gonsalves,* 86 R. I. 68, 133 A.2d 721. There the employee was injured in September 1955 and she was awarded total incapacity benefits. In August 1956, the employer filed a petition to review. In October 1956, the commission found that the employee was no longer totally incapacitated but that she remained partially incapacitated and ordered payment of partial disability payments. The Legislature had, however, in the Spring of 1956 amended the Workmen's Compensation Act by providing that a partially incapacitated employee, who was unable to find suitable work with his employer or elsewhere, could be compensated as if he were totally disabled. Before the amendment, such an employee was limited to the maximum allowed for partial incapacity.

We ruled that the employee was entitled to the benefit of the amendment. In so doing, we said that the Legislature had evidenced a concern for a class of employees who were unable to obtain suitable employment. The 1956 amendment, we declared, neither increased nor diminished the compensation payable to a partially inca-

pacitated employee. Instead it worked a procedural change whereby a worker classified as partially incapacitated but willing to work became entitled to be compensated in the same manner and to the same extent as if he were totally incapacitated. See *Kostiv* v. *Fedorowicz*, 99 R. I. 343, 207 A.2d 387. The statute in *Gonsalves* did not reach back and fix the amount of compensation payable before its passage. The amendment was described as being procedural and would be applied to any case pending before the commission at the time the act became effective. Compensation was not paid until it was legally determined that the partially disabled worker wanted work. He would then be elevated to the status of a totally incapacitated worker. It was only after he reached such a plateau that he *then* became entitled to the substantive rights given such employees.

The 1969 act differs considerably from the statute in *Gonsalves*. Here, employee seeks to apply a completely different formula effective September 1, 1969 to establish the weekly compensation benefits for a July 1969 injury. The amendment creates a new right for the employee and greater liability for the employer. Had the amendment resulted in a reduction of the weekly benefit, we have no doubt that employee would, and correctly so, be urging us to classify the 1969 act as substantive law.

The employee's appeal is denied and dismissed; the decree appealed from is affirmed; and the cause is remanded to the Workmen's Compensation Commission.

*John Quattrocchi, Jr.,* for petitioner.

*Keenan, Rice, Dolan & Reardon, H. Eliot Rice,* for respondent.